Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
**THIERMAN BUCK**
325 W. Liberty Street
Reno, Nevada 89501
Tel. (775) 284-1500
Fax. (775) 703-5027

*Attorneys for Plaintiff*
*and the Putative Classes*

S. Brett Sutton, Nev. Bar No. 143107
brett@suttonhague.com
Jared Hague, Nev. Bar No. 251517
jared@suttonhague.com
**SUTTON HAGUE LAW**
**CORPORATIONS, P.C.**
9790 Gateway Drive
Suite 200
Reno, Nevada 89521
Tel. (775) 284-2770
Fax. (775) 313-9877

*Attorneys for Defendant*
*Golden Road Motor Inn, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JEFFERSON TYLER, on behalf of himself and all other similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>GOLDEN ROAD MOTOR INN, INC. d/b/a ATLANTIS CASINO RESORT SPA; and DOES 1 through 50, inclusive,<br><br>Defendant(s). | Case No.: 3:24-cv-00565-MMD-CLB<br><br>**JOINT MOTION FOR PRELIMINARY APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT** |

Plaintiff JEFFERSON TYLER ("Plaintiff"), on behalf of himself and all other similarly situated individuals, by and through his undersigned counsel, and Defendant GOLDEN ROAD MOTOR INN, INC. d/b/a ATLANTIS CASINO RESORT SPA ("Defendant" or "Atlantis"), by and through its undersigned counsel (collectively Plaintiff and Defendant may be referred to throughout this Motion as the "Parties") hereby move this honorable Court pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP") and the Fair Labor Standards Act ("FLSA") for an order:

    (1)    Conditionally certifying the 29 U.S.C. § 216(b) collective and Rule 23 class for

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

settlement purposes;

(2)     Preliminarily approving the Parties' Joint Stipulation of Settlement and Release ("Settlement"), a copy of which is attached as Exhibit 1 to the Declaration of Leah L. Jones ("Jones Dec.") filed herewith; and

(3)     Approving the manner and form of Notice attached to the Settlement as Exhibit C and the proposed distribution plan to class members.

This Motion is based on the following Memorandum of Points and Authorities in support hereof, the declarations filed in support of this Motion and all accompanying exhibits, pleading papers, and records on file herein, all matters upon which judicial notice may be taken, any oral argument that may be presented, and upon such other matters the Court deems just and necessary.

Dated:  December 29, 2025

**THIERMAN BUCK**


/s/  Leah L. Jones
Joshua D. Buck, Nev. Bar No. 12187
Leah L. Jones, Nev. Bar No. 13161

*Attorneys for Plaintiff*
*and the Putative Classes*

Dated:  December 29, 2025

**SUTTON HAGUE LAW CORPORATIONS, P.C.**

/s/ Jared Hague
S. Brett Sutton, Nev. Bar No. 143107
Jared Hague, Nev. Bar No. 251517

*Attorneys for Defendant*
GOLDEN ROAD MOTOR INN, INC. d/b/a
ATLANTIS CASINO RESORT SPA

1

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiff filed this collective and class action on December 9, 2024, alleging the following six (6) causes of action on his behalf and on behalf of all similarly situated individuals: (1) Violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq.; (2) Failure to Pay Overtime in Violation of 29 U.S.C. § 207; (3) Failure to Pay Minimum Wages in Violation of the Nevada Constitution and NRS 608.250, et seq.; (4) Failure to Compensate for All Hours Worked in Violation of NRS 608.140 and 608.016; (5) Failure to Pay Overtime in Violation of NRS 608.140 and 608.018; and (6) Failure to Timely Pay All Wages Due and Owing in Violation of NRS 608.140 and 608.020-050. (ECF No. 1.) Defendant filed an Answer to Plaintiff's Collective and Class Action Complaint on February 6, 2025. (ECF No. 6). Prior to the entry of a Discovery Plan and Scheduling Order, the case was stayed on March 25, 2025, to allow the Parties to engage in early settlement discussions. (ECF No. 12.)

The Parties engaged in extensive discussions regarding their respective positions, and the information and data needed to properly evaluate the merits of the claims alleged. (*See* Settlement § 3; Declaration of Leah L. Jones, hereinafter "Jones Dec." ¶ 10.) Defendant's counsel provided Plaintiff's counsel with sample class member timekeeping and payroll data. (*Id.*) Thereafter, the Parties retained the services of Hon. Amy Hogue (Ret.) to conduct a mediation and provide a frank assessment of each Party's case. (*Id.*) The Parties participated in two mediation sessions with Judge Hogue. (*Id.*) Following extensive discussions regarding the strengths and weaknesses of their respective positions, the Parties reached a proposed class action settlement through arms-length direct negotiations. (*Id.*; ECF No. 17.)

Following settlement discussions, the Parties stipulated to the filing of Plaintiff's First Amended Collective and Class Action Complaint to include factual claims of minimum and overtime wages owed to Plaintiff, and all other similarly situated individuals, for meal breaks that were allegedly not in compliance with Nevada and federal wage and hour laws, which was approved by the Court on December 15, 2025. (ECF No. 22; *see also* Jones Dec. ¶ 12.) The original six causes of action found in the initial complaint remained unchanged in Plaintiff's First

Amended Collective and Class Action Complaint, also filed on December 15, 2025. (ECF No. 23-23-2; *see also* Jones Dec. ¶ 12.)

## II.    SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS

The Parties' Settlement provides for significant monetary recovery on behalf of the Class[1] and releases from the Class only those claims alleged in or related to the Complaint. (Settlement § 21.) Furthermore, the Settlement sets forth the legally appropriate mechanism for providing notice to the Class of the terms and conditions of the Settlement. (*Id.* § 17.)

**The Recovery.**

The Settlement provides for a total settlement amount of $3,900,000.00. (*Id.* § 13.c; *see also* Jones Dec. ¶ 12.) Out of that amount, the following approximate[2] breakdown applies:

- $2,512,500.00 in estimated settlement funds to the Class ("Net Settlement Fund");
- $30,000.00 as a service award to Plaintiff Jefferson Tyler;
- Up to $32,500.00 in settlement administration costs;
- Up to $1,300,000.00 in attorneys' fees (1/3 of the total settlement amount); and
- Up to $25,000.00 in litigation costs.

(Settlement §§ 13.d, 13.i, 15; *see also* Jones Dec. ¶ 13.) Subject to Court approval, Defendant agrees to pay a maximum settlement amount of $3,900,000.00 to cover all payments arising out of this Settlement, with the exception of Defendant's share of payroll taxes, which are not included in the total settlement amount. (*Id.* § 12.) Class Members who wish to participate in the Settlement and receive their share of settlement funds *do not need to do anything*. (*Id.* § 12.) This is a non-reversionary, total payout Settlement. Funds that remain uncashed after the 90-day negotiability of the check and funds for those who opt out of the Settlement will be remitted to

---

[1] "Class" or "Class Members" means all non-exempt hourly paid employees employed by Golden Road Motor Inn, Inc. d/b/a Atlantis Casino Resort Spa at any time during the Class Period. (Settlement § 1.w).

[2] The dollar amounts provided are approximations based on the pending approval by this Court of Class Counsel's fees and costs, the Claims Administrator's fees, as well as the Court's approval of the Class Representative's Service Award.

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

the *cy pres* beneficiaries, Northern Nevada Legal Aid (https://www.nnlegalaid.org/) and Nevada Legal Services (https://nevadalegalservices.org/). (*Id.* § 13.k.)

Settlement Class Members who do not exclude themselves from the Settlement shall be eligible to recover a share of the Net Settlement Fund, in accordance with a plan of allocation based on the number of qualifying shifts worked by Class Members during the Class Period. (*Id.* § 13.f.) The Settlement provides that each payment to a Class Member will be paid as follows: twenty percent (20%) will be allocated to alleged unpaid wages for which an IRS Form W-2 will issue; and eighty percent (80%) (1/2) will be allocated to alleged unpaid interest and penalties for which an IRS Form 1099-MISC will issue. (*Id.* § 13.g.)

**The Release.**

The Settlement provides that, in consideration for the Settlement, participating Class Members, i.e. any Class Member who does not submit a timely and valid request to opt-out pursuant to Section 18 of the Settlement, will release only claims and causes of action relating to or arising out of the facts alleged in this action and that reasonably arise or could have arisen out of the facts alleged as to the Class Members. (Jones Dec. ¶ 16, *citing* Settlement § 21.) The release specifically states as follows:

> Upon final approval by the Court of this Stipulation of Settlement, and except as to such rights or claims as may be created by this Stipulation of Settlement, each Class Member who has not submitted a timely and valid Request for Exclusion, and without the need to manually sign a release document, in exchange for the consideration recited in this Agreement, on behalf of themself and on behalf of their current, former, and future heirs, executors, administrators, attorneys, agents, and assigns, shall and does hereby fully and finally release the Released Parties from any and all claims of any kind whatsoever, whether known or unknown, whether based on common law, regulations, statute, or a constitutional provision, under state, federal or local law, arising out of the allegations made in the Action and that reasonably arise or could have arisen out of the facts alleged in the Action as to the Class Members, including but not limited to claims for or related to alleged unpaid wages, unpaid overtime, failure to provide meal and/or rest periods, damages, penalties, interest, attorneys' fees and costs, and all other claims and allegations made in the Action and that arise out of the facts or could have arisen out of the facts alleged in the Action, from

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

December 9, 2021 up through and including the date of the Court's Final Order and Judgment approving this Settlement. Such claims include, but are not necessarily limited to, any and all applicable state and federal law wage-and-hour claims (including, but not necessarily limited to contractual or common law claims for wages, Nevada Constitution Art. XV, Sec. 16, the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., 29 CFR § 785.19, The Fair Credit Reporting Act, Nevada Revised Statutes §§ 608.016, 608.018, 608.019, 608.020, 608.030, 608.040, 608.050, 608.115, 608.140, 608.190, and 608.260, and Nevada Administrative Code §§ 608.115, 608.123, 608.125 and 608.145), rights, demands, liabilities, penalties, and causes of action of every nature and description, whether known or unknown, arising during the released period (commencing on December 9, 2021 and ending on the date of the Court's Final Order and Judgment approving this Settlement) arising out of the allegations described in the complaint in this Action. Notwithstanding the foregoing, nothing in this Agreement releases any claims that cannot be released as a matter of law.

(Settlement § 21.) Named Plaintiff Jefferson Tyler will further agree to a general release of any and all claims against Defendant, including a pending EEOC claim for discrimination as of the date of the order granting final approval of the Settlement, in consideration for his requested service award. (*Id.* §§ 13.i, 20; Jones Dec. ¶ 24.) Nothing in the Settlement releases any claims that cannot be released as a matter of law.

**The Settlement Mechanism.**

The Parties have agreed to use a third-party Settlement Administrator, CPT Group, to administer the Notice process and Settlement. (*Id.* §§ 1.b, 14.) The Settlement provides for the Settlement Administrator to send out notice explaining the terms and conditions of the Settlement to all Class Members. (*Id.* § 17.) A copy of the Notice to be approved by the Court and sent to class members is attached as Exhibit C to the Settlement. To request exclusion from the Settlement, a Class Member must opt out of the Settlement by submitting a written statement electing to exclude himself or herself from the Settlement as set forth in the Settlement and the Notice. (*Id.* § 18.) Following mailing of the Notice, Class Members then have thirty (30) days to request to be excluded from the Settlement, or object to the Settlement. (*Id.* §§ 18, 19.)

The Settlement further provides that, following the notice period, the Court will hold a final "fairness" hearing to provide final review and approval of the Settlement. (*Id.* § 23.a.) The Notice advises class members about the fairness hearing and their opportunity to attend the hearing and make their views known. (*Id.,* Exhibit C, Notice.) At the fairness hearing, the Parties will address any issues raised by Class Members or the Notice process itself, and the Court will have a second opportunity to review the settlement in full.

### III.    THE LEGAL FRAMEWORK WEIGHS IN FAVOR OF GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT

FRCP 23(e) provides that settlement of the claims of a certified class is subject to the court's approval. In general, settlement of class actions is favored as a matter of "strong judicial policy." *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)).

Procedurally, the reviewing court's evaluation is conducted in two stages. (*Id.*) At the first stage, the court conditionally certifies a class for settlement purposes, preliminarily approves the settlement pending the "fairness hearing," and authorizes notice of the proposed class settlement to be given to the class. (*Id.* (citations omitted); *see also Manual for Complex Litigation (Fourth)* § 21.632 (2004) ("Manual for Complex Litigation") (summarizing "preliminary fairness review")). Stage two is the fairness hearing, set for a time after notice has been provided to the class and class members have had an opportunity to submit objections to the proposed settlement or to opt out of it, and the court reaches a final determination about whether the proposed settlement should be approved as a fair, adequate, and reasonable resolution of the dispute. *Alberto*, 252 F.R.D. at 659 (citations omitted).

Here, because this is the first stage of the Court's evaluation of the Settlement, the Parties submit that: (A) the Class should be certified for settlement purposes; (B) the Settlement should be preliminary deemed fair, reasonable, and adequate; and (C) notice to Settlement Class Members should be sent out as set forth in the Settlement.

### A.    The Proposed Settlement Class.

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

1    Pursuant to the Settlement, the Parties seek to certify the following class for settlement

2    purposes under Rule 23 of the Federal Rules of Civil Procedure and the FLSA:

3        All non-exempt hourly paid employees employed by Golden Road
         Motor Inn, Inc. d/b/a Atlantis Casino Resort Spa at any time since
4        December 9, 2021 up to and including the date the Court grants
         preliminary approval of this Settlement.
5

6    (Settlement § 6; *see also* Jones Dec. ¶ 15.)

7        **B.    The Proposed Settlement Should be Preliminarily Approved.**

8        In the Ninth Circuit, settlements of complex class action lawsuits are strongly favored.

9    *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *Speed Shore Corp., v.*

10   *Denda,* 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are

11   judicially favored as a matter of sound public policy. Settlement agreements conserve judicial

12   time and limit expensive litigation."). It is within the broad discretion of the trial court to approve

13   a class action settlement. *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir.

14   1982). The approval of a class action settlement takes place in two stages: preliminary approval

15   and final approval. *West v. Circle K Stores, Inc.,* No. 04-0438, 2006 WL 1652598, at *2 (E.D.

16   Cal. June 13, 2006). Preliminary approval of a class action settlement and notice to the class is

17   appropriate if the proposed settlement: (1) appears to be the product of serious, informed, non-

18   collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential

19   treatment to class representatives or segments of the class; and (4) falls within the range of

20   possible approval. FRCP 23(e)(2); *Bellinghausen v. Tractor Supply Co.,* 303 F.R.D. 611, 619

21   (N.D. Cal. 2014) (citing *Cruz v. Sky Chefs, Inc.,* No. C-12-02705 DMR, 2014 WL 2089938, at

22   *7 (N.D. Cal. May 19, 2014) (quoting *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078,

23   1079 (N.D. Cal. 2007)).

24       At the preliminary approval stage, the Court "must make a preliminary determination on

25   the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation

26   of the notice of the certification, proposed settlement, and date of the final fairness hearing." *See*

27   *In Re M.L. Stern Overtime Litigation*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864 at *3

28   (S.D. Cal. April 13, 2009) (quoting Manual on Complex Litigation Fourth § 21.632 (2004)).

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

During the preliminary process, the Court simply determines "whether there is any reason to notify the class members of the proposed class settlement and to proceed with the fairness hearing." *Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). The Court's review is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. If there are no obvious deficiencies, and the settlement falls into the range of possible approval, it should be preliminarily approved. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1057 (9th Cir. 2008); *Alaniz v. California Processing, Inc.,* 73 F.R.D. 269, 273 (C.D. Cal. 1976).

In this matter, an expeditious decision on the papers would promote a fair, effective, and efficient administration of Notice and is in line with the past practice of this Court. While a hearing is required for final approval of a potential Settlement, no such hearing is required at the earlier preliminary approval stage. *See, e.g.*, *Nelson v. Wal-Mart Associates, Inc.*, Case No. 3:21-cv-00066-MMD-CLB (August 15, 2023 Order Granting Motion for Preliminary Approval of Class and Collective Action Settlement); *DeWeese v. ITS National, LLC*, Case No. 3:18-cv-00375-MMD-WGC (March 20, 2019 Order Granting Preliminary Approval of Class Action Settlement) (attached to the Jones Dec. at ¶ 28, as Exhibits 3 and 4, respectively). As set forth below, the proposed Settlement satisfies the standard for preliminary approval.

        1.    <u>The Settlement Falls Within the Range of Possible Approval Given the Strengths and Weaknesses of the Claims and Defenses.</u>

To grant preliminary approval, this Court must decide that the Settlement falls within the approved range for preliminary approval. *Zepeda v. Paypal, Inc.*, No. C 10-2500 SBA, 2015 WL 6746913 (N.D. Cal. Nov. 15, 2015), at *4; *Fraley v. Facebook, Inc.,* No. C 11-1726 RS, 2012 WL 5838198, (N.D. Cal. Aug. 17, 2012) at *1 n.1; *In re Tableware Antitrust Litigation*, 484 F. at , 1079. To determine whether a settlement "falls within the range of possible approval," courts consider "substantive fairness and adequacy" and "plaintiffs' expected recovery balanced against the value of the settlement[.]" *Tableware*, 484 F.Supp.2d at 1080. In determining whether the

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com www.thermanbuck.com

Settlement is adequate and reasonable, the Court must ultimately balance the following factors: "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel ..." *Hanlon*, 150 F.3d at 1026.

Here, the Settlement represents a significant recovery on behalf of the Class given the risks associated with this case for several reasons. First, (Jones Dec. ¶¶ 16-19.) Class Counsel represents that they have conducted a thorough investigation into the facts of this case and have diligently pursued an investigation of the claims against Defendant. (*Id.*) Based on their independent investigation and evaluation, Class Counsel are of the opinion that the Settlement is fair, reasonable, and adequate and that it is in the best interest of the Settlement Class Members in light of all known facts and circumstances, including the risk of significant delay, the defenses asserted by Defendant, trial risk, and appellate risk. (*Id.*)

Defendant denies any liability or wrongdoing of any kind associated with the claims alleged and contends that, but for the Settlement, this Litigation is not appropriate for class or representative treatment. (Settlement § 7.)

Thus, the Settlement represents a compromise between experienced counsel for Plaintiff and Defendant based upon each Party's honest assessment of the legal and factual strengths as well as weaknesses, coupled with costs of litigation on a class and collective basis. (*Id.*; Jones Dec. ¶ 17.)

        2.        <u>All four criteria of FRCP 23(a) are met.</u>

***FRCP 23(a)(1): The class is so numerous that joinder of all members is impracticable.*** "As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement." *Quintero v. Mulberry Thai Silks, Inc.,* No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at *7 (N.D. Cal. Oct. 22, 2008) (citation omitted). However, the key consideration is whether the facts and circumstances of this particular case render joinder impractical. *Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 847 (2005) (citing *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005)). And "the numerosity requirement

includes no specific numerical threshold." *Andrews Farms v. Calcot, Ltd.*, 258 F.R.D. 640, 651 (E.D. Cal. 2009) (citing *Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)); *Shuette*, 121 Nev. at 847.

Here, the settlement Class consists of approximately 4,500 individuals. (Jones Dec. ¶ 17.) Thus, Plaintiff submits that the numerosity criterion is satisfied. Only for purposes of approving this Settlement subject to Court approval, Defendant does not oppose Plaintiff's assertion that sufficient numerosity exists.

**FRCP 23(a)(2): There are questions of law or fact common to the Class.** The commonality requirement is construed liberally. *Alberto v. GMRI, Inc.*, 252 F.R.D. at 660 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (Rule 23(a)(2) construed "permissively"). The class members' claims must share some substantial issues of law or fact, but need not be identical. *Quintero*, 2008 U.S. Dist. LEXIS 84976, at *8. Either "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class" satisfies this criterion. *Hanlon,* 150 F.3d at 1019.

Here, Plaintiff and Class Members assert common factual and legal questions, which include whether Defendant violated the FCRA by procuring background reports without a FCRA-compliant disclosure, whether Defendant failed to compensate Plaintiff and putative class members for all the hours they worked as a result of Defendant's rounding policy and noncompliant meal breaks, and whether Class Members who are former employees were paid all their wages due and owing at the time of their termination. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F. Supp.2d 1053, 1062-63 (N.D. Cal. 2007); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 607 (C.D. Cal. 2005); *see also ECF No. 23, FAC.*) Based on these common issues, Plaintiff submits that this criterion is met. For purposes of approving this Settlement subject to Court approval only, Defendant does not oppose Plaintiff's assertion that sufficient commonality exists.

**FRCP 23(a)(3): The claims or defenses of the representative parties are typical of the claims or defenses of the class.** Like commonality, the typicality standard is applied

THERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com www.thermanbuck.com

"permissive[ly]." *See Staton,* 327 F.3d at 957 (quoting *Hanlon,* 150 F.3d at 1020). It is satisfied if the representatives' claims are "'reasonably coextensive with those of absent class members; they need not be substantially identical.'" (*Id.*)

Here, the named Plaintiff is a former non-exempt hourly employee of Defendant who utilized the same timekeeping system as Class Members, was subject to the same rounding policy and meal break policy as Class Members, and was subject to the same or similar background check and related disclosures as Class Members. (FAC, ECF No. 23, ¶¶ 11-40.) Plaintiff's allegations that Defendant violated the FCRA and that Plaintiff was not compensated adequately as a result of Defendant's rounding policy and meal break policy are thus common for him and all persons he seeks to represent. (*Id.*) For purposes of approving this Settlement subject to Court approval only, Defendant does not oppose Plaintiff's assertion that sufficient typicality exists.

**FRCP 23(a)(4): The representative party will fairly and adequately protect the interests of the class.** Courts have interpreted this requirement as posing two questions: (1) whether the named plaintiff or their counsel has any conflicts of interest with other class members, and (2) whether the named plaintiff and their counsel will vigorously prosecute the action on behalf of the class. (*See Hanlon* and other cases.) Here, neither named Plaintiff Tyler nor his counsel have interests antagonistic to those of other Class Members. (FAC ¶ 52.D.) To the contrary, the named Plaintiff shares with absent Class Members the same interest in recovering compensation as a result of the alleged violations by Defendant through their background checks, timekeeping, and meal break policies and practices. (*Id.*) Moreover, Plaintiff's counsel has extensive experience in wage and hour class actions, as well as class action litigation more generally. (Jones Dec. ¶¶ 5-8.) Additionally, the proposed settlement was reached only after two mediation sessions with Mediator, Judge Amy Hogue (Ret.), and ultimately through a mediator's proposal. (Jones Dec. ¶ 11.) Indeed, following extensive discussions regarding the strengths and weaknesses of their respective positions, the Parties reached a proposed class action settlement through arms-length direct negotiations. (Settlement § 3; *see also* Jones Dec. ¶ 11.)

        3.      The criteria of FRCP 23(b)(3) are met.

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

To certify a class under FRCP 23(b)(3), a court must find that common questions of fact or law predominate over questions affecting only individual members of the proposed class, and that a class action is the superior method for fairly and efficiently adjudicating the controversy. FRCP 23(b)(3). Plaintiff submits that both criteria are met here. For the purposes of approving this Settlement, subject to Court approval only, Defendant does not oppose such assertion.

*The predominance requirement is met*. The predominance inquiry "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case, and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir. 2001), *cert. denied,* 534 U.S. 973,122 S. Ct. 395 (2001) ("Local Joint Executive Bd.") (quoting *Hanlon,* 150 F.3d at 1022).

As in numerous other wage and hour class actions, the fact that this litigation arises from Defendant's uniform wage-and-hour and overtime policies, and uniform background check disclosures, strongly supports a finding that common issues of law and fact predominate, such that this requirement is satisfied. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 527 F. Supp.2d at 1068; *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953, 958 (C.A.9 2009). Accordingly, Plaintiff argues that common issues of law and fact predominate, and Defendant does not oppose this argument for purposes of settlement approval only.

*The superiority requirement is met.* Determining whether a class action is the superior method of adjudicating a controversy involves "comparing alternative mechanisms of dispute resolution" as applied to the facts and claims. *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 614 (C.D. Cal. 2005). Plaintiff alleges that the situation here is comparable to that of the Las Vegas Sands' former casino employees, who sought damages for failure to provide a statutorily required 60-day notice before closure:

> This case involves multiple claims, some for relatively small individual sums. Counsel for the would-be class estimated that, under the most optimistic scenario, each class member would

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

> recover about $1,330. If plaintiffs cannot proceed as a class, some - perhaps most - will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve.

*Local Joint Executive Bd.,* 244 F.3d at 1163 ("Class actions … may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (*citing Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985)). In such a situation, the superiority requirement is "easily satisfied." (*Id.*) Plaintiff avers that the same holds true here. Defendant does not oppose such a finding for purposes of this Court's settlement approval only.

### C.    The Proposed Settlement Is Fair, Reasonable, and Adequate.

The *Manual for Complex Litigation* § 21.62 identifies several factors that courts may weigh in determining whether a settlement is fair, reasonable, and adequate (FRCP 23(e)(2)), summarizing the inquiry as follows: Fairness calls for a comparative analysis of the treatment of class members vis-a-vis each other and vis-a-vis similar individuals with similar claims who are not in the class. Reasonableness depends on an analysis of the class allegations and claims, and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process. (*Id.* § 21.62 at 315.)

At the preliminary approval stage, courts do not make a final determination of fairness, reasonableness, and adequacy of the proposed settlement. Instead, the key question at this point is only whether the settlement is "potentially fair, as the Court will make a final determination of [the settlement's] adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Equifax Info. Servs. LLC,* 243 F.R.D. 377, 386 (C.D. Cal. 2007). Thus, the inquiry should focus on whether the proposed settlement falls within the "range of possible approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing notice to class members informing them about the proposed settlement and their options for responding and participating. *Molski v. Gleich,* 318 F.3d 937,944 (9th Cir. 2003); *see also Manual for Complex Litigation* § 21.632. "Once the judge is satisfied as to the ... results of the initial inquiry into the [1] fairness, [2] reasonableness and [3] adequacy of the settlement,"

1  the court should direct notice to issue and schedule a final approval hearing. (*Id.* § 21.633 at 321.)

2  Plaintiff avers that all three are preliminarily met as follows:

3             1.      The Settlement Is Fair.

4          **Fairness of distribution among Class Members.** A plan of distribution that

5  compensates class members based on the type and extent of their injuries is generally considered

6  reasonable. *Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL 7454183, at *8

7  (N.D. Cal. Nov. 23, 2015) ("Such a plan 'fairly treats class members by awarding a pro rata

8  share' to the class members based on the extent of their injuries.") (Internal citation omitted.).

9  Here, all Class Members who do not request to opt out of the Settlement will receive a Settlement

10 share which will be based proportionately on each Class Member's number of qualifying shifts,

11 according to time in position and payroll records. (Settlement § 13.f; *see also* Jones Dec. ¶ 17.)

12 Thus, the Settlement's proposed plan of allocation equitably bases the distribution of Settlement

13 funds on the type and extent of damages suffered by each individual Class Member.

14         **Fairness of proposed attorneys' fees.** The allocation of total settlement funds between

15 Class Members and Class Counsel is also fair, in that the Settlement provides for Plaintiff's

16 counsel to seek an amount that is no more than one-third of the Total Settlement Amount in fees.

17 (Settlement § 15; Jones Dec. ¶ 13.) The requested fees are fair compensation for undertaking

18 complex, risky, expensive, and time-consuming litigation solely on a contingency basis.

19 Furthermore, the request aligns with other attorneys' fees awards for wage and hour class actions,

20 particularly where a significant portion of the class members will be receiving substantial

21 Settlement payment amounts of several hundred dollars. Indeed, courts have recognized that an

22 appropriate method for awarding attorneys' fees in class actions is to award a percentage of the

23 "common fund" created as a result of the settlement. *Vincent v. Hughes Air West, Inc.*, 557 F.2d

24 759, 769 (9th Cir. 1977). The purpose of the common fund/percentage approach is to "spread

25 litigation costs proportionally among all the beneficiaries so that the active beneficiary does not

26 bear the entire burden alone." (*Id.*)

27         Moreover, several courts have expressed frustration with the alternative "lodestar"

28 approach for determining fee awards, which typically involves reviewing voluminous and often

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

1    indecipherable time records. Commenting on the loadstar approach, Chief Judge Marilyn Hall

2    Patel wrote in *In re Activision Securities Litigation,* 723 F. Supp. 1373, 1375 (N.D. Cal. 1989):

> This court is compelled to ask, "Is this process necessary?" Under a cost-benefit analysis, the answer would be a resounding, "No!" Not only does the *Lindy Kerr-Johnson* analysis consume an undue amount of court time with little resulting advantage to anyone, but in fact, it may be to the detriment of the class members. They are required to wait until the court has conducted a thorough and conscientious analysis of the attorneys' fees petition. Or class members may suffer a further diminution of their fund when a special master is retained and paid from the fund. Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must rely on a lodestar approach, there is little incentive to reach an early settlement.

11    Indeed, the percentage approach is preferable to the lodestar because: (1) it aligns the

12    interests of class counsel and absent class members; (2) it encourages efficient resolution of the

13    litigation by providing an incentive for early, yet reasonable, settlement; and (3) it reduces the

14    demands on judicial resources. *In re Activision Securities Litigation*, 723 F. Supp. at 1378–79.

15    Courts now routinely use the percentage of the common fund approach to determine the award

16    of attorneys' fees. (*See, e.g.*, *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378–79

17    (9th Cir. 1994) (approving attorneys' fees of one-third of the settlement fund).

18    Class Counsel's application for one-third of the Settlement Funds in this case is within

19    the range of reasonableness. Historically, courts have awarded percentage fees ranging from 20%

20    to 50% of the common fund, depending on the specific circumstances of the case. *Newberg on

21    Class Action* § 14:6 (4th ed. 2008); *see also In re Activision Securities Litigation*, 723 F. Supp.

22    1373, 1378 (N.D. Cal. 1989). According to *Newberg*: "No general rule can be articulated on what

23    is a reasonable percentage of a common fund. Usually, 50% of the fund is the upper limit on a

24    reasonable fee award from a common fund in order to assure that the fees do not consume a

25    disproportionate part of the recovery obtained for the class, although somewhat larger

26    percentages are not unprecedented." *Newberg*, § 14:6. Accordingly, the attorneys' fees sought in

27    this case are fair and reasonable.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

**Fairness of proposed Service Awards for Named Plaintiff**. The principle of fairness is also well-served by the $30,000 Service Award proposed for the named Plaintiff for numerous reasons. First, Plaintiff Tyler sought out Class Counsel well-versed in Nevada wage law, sought counsel who would represent employees on a contingency fee basis, and has acted as the sole Named Plaintiff throughout the litigation. *See* Declaration of Jefferson Tyler ("Tyler Dec."), attached hereto, at ¶¶ 4-12; Jones Dec. ¶ 21.

Second, Plaintiff Tyler Plaintiff Tyler provided invaluable assistance to Plaintiff's counsel in explaining Defendant's alleged compensation policies, break policies, the onboarding process and the FCRA disclosures and signature process, made himself available for two separate mediation sessions to answer questions, as well as reviewed the Settlement Agreement to ensure it was fair to not just himself, but the absent Class Members, putting his responsibility as a representative to his fellow Class Members above his own.   (Tyler Dec. ¶¶ 6-13; Jones Dec. ¶ 22.) In short, without Plaintiff's involvement, this case would not have been possible, and members of the Class would never receive their share of allegedly owed wages and penalties. (Jones Dec. ¶ 22.)

Third, Plaintiff incurred personal risk in bringing this lawsuit on behalf of the other persons in the Class. (Tyler Dec. ¶¶ 13-14; Jones Dec. ¶ 23.)  *See, e.g.*, *Koehl v. Verio,* 142 Cal. App. 4th 1313, 1328 (2006) (in wage and hour action where the defendant prevailed at trial, the named plaintiffs were held liable, jointly and severally, for the defendant's attorneys' fees). He could have been held liable for Defendant's costs if he were ultimately unsuccessful in resolving the case, and his potential employment opportunities could (and can still be) impacted because of his public participation in this lawsuit. (Tyler Dec. ¶¶ 13-14.) Such payments are recognized as serving an important function in promoting class action settlements. In *League of Martin v. City of Milwaukee,* 588 F. Supp. 1004 (E.D. Wis. 1984), the court held that the proposed settlement properly granted the named plaintiff additional relief, explaining that it is "not uncommon for class ... members to receive special treatment in settlement" when they have been instrumental in prosecuting the lawsuit. *Id.* at 1024.

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

Fourth, in exchange for this payment, Plaintiff has agreed to a general release of all of his claims, not just the wage-hour and FCRA claims arising out of the facts that were asserted in this action, but he also agreed to withdraw a pending EEOC charge against Defendant. (Tyler Dec. ¶ 15; Jones Dec. ¶ 24.) Significantly, this includes the release of his pending claims for discrimination and retaliation by the Defendant. (*Id.*) As a result of all of Mr. Tyler's aforementioned efforts, the Service Award to the named Plaintiff in the amount of $30,000.00 should be deemed fair and reasonable. (Jones Dec. ¶ 25.)

2.    The Settlement Is Reasonable.

At $3,900,000.00, the proposed Settlement is reasonable. This is not a settlement where the aggregate figure is large simply because the size of the class is in the tens or hundreds of thousands. Instead, the Class size in this case is relatively small, with around 4,500 Class Members, and Settlement Class Members are eligible for individual financial benefits based proportionally on their number of qualifying shifts, according to time in position and Defendant's payroll records. (Settlement § 13.f.) These considerations indicate that the proposed settlement falls within the range of reasonableness, warranting preliminary approval.

This conclusion is reinforced by considering factors such as the risk that a Class might not be certified pursuant to FRCP 23, or might be significantly smaller than proposed, and also considering the risks of further litigation specific to the merits of Plaintiff's wage claims and the propriety and amount of related penalties for both the wage claims and the FCRA claims. (Jones Dec. ¶ 16.) This would add potentially years-long additional time spent litigating the case, including any appeals, the potentially dispositive defenses advanced by Defendant, and the liability and amount owed to class members. (*Id.*) Thus, the $3,900,00.00 Settlement represents a significant recovery based on the alleged violations. (Jones Dec. ¶¶ 16-19.)

Furthermore, while Class Counsel believes that Plaintiff's claims are meritorious, they are experienced class action litigators and understand that the outcome of class certification, trial, and any appeals is inherently uncertain, as well as likely to consume many more months or years. (Jones Dec. ¶ 19.) Having reviewed relevant compensation data and employment information, counsel for the Parties—all experienced class action litigators well-versed in wage and hour

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

1  law—arrived at a reasonable resolution through a protracted arm's-length direct negotiation

2  process, which continued through the negotiation of all details of the Settlement Agreement and

3  ancillary documents. (*Id.* ¶ 28.) Indeed, Counsel for the Parties participated in pre-mediation

4  conference calls with their respective data and damage analysts to ensure the Parties were

5  prepared for a productive mediation, and then ultimately accepted the mediator's proposal when

6  they were unable to reach a settlement after two mediation sessions. (*Id.* ¶¶ 10-11.)

7  Another factor considered in approving a settlement is the complexity, expense, and

8  likely duration of the litigation. *Officers for Justice*, 688 F.2d at 625. The Court must weigh the

9  benefits of the proposed settlement against the expense and delay involved in achieving an

10  equivalent or more favorable result at trial. *See, e.g.*, *Young v. Katz,* 447 F.2d 431, 433–34 (5th

11  Cir. 1971). Employment cases, particularly those involving wage and hour disputes, are often

12  expensive and time-consuming. This is a class action that further amplifies the economies of

13  time, effort, and expense achieved by the Settlement. Inevitably, the certification process alone

14  would add time and cost to the litigation process. The Settlement, on the other hand, provides

15  Class Members substantial, prompt, and efficient relief. The Settlement in this case is therefore

16  consistent with the "overriding public interest in settling and quieting litigation" that is

17  "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950

18  (9th Cir. 1976) (footnote omitted); *see also 4 Newberg on Class Actions* § 11.41 (citing cases).

19  Here, the Settlement represents a compromise between experienced counsel for Plaintiff

20  and Defendant based upon each Party's honest assessment of the legal and factual strengths and

21  weaknesses of their respective positions. After accounting for all anticipated fees, costs, and

22  enhancements requested herein, each of the approximately 4,500 Class Members who do not

23  request to exclude themselves from the Settlement will receive a settlement share based

24  proportionately on each Class Member's number of qualifying shifts, according to time in

25  position and payroll records. (Settlement § 13.f; *see also* Jones Dec. ¶¶ 16-18.) Basing the Class

26  Members' recovery on time in position and payroll records is a fair and reasonable means to

27  calculate settlement shares because Class Members who worked more will receive a larger

28  payout. (*Id.* ¶ 17.) This conclusion is reinforced by considering factors such as the risk that a

class might not be certified or might be significantly smaller than proposed, as well as the time, expense, and complexity of further litigation. (*Id.* ¶¶ 16, 19.) Defendant asserts that it timely paid the Class Members all wages, provides for lawful rest periods, steadfastly maintains their FRCA disclosures are compliant, and argues that penalties are not applicable to the alleged violations or should be drastically reduced. (*Id.* ¶ 17.) Defendant further asserts that the matter is not appropriate for class treatment. (*Id.* ¶ 16.) The claims and defenses at issue in this case would likely result in protracted litigation, extensive class-wide discovery, and a likelihood of appellate proceedings. (*Id.* ¶¶ 16-17.) Ultimately, there were significant remaining risks for both Parties, and the Parties' Settlement represents an adequate and reasonable compromise that falls within the range necessary to support preliminary approval and notification to members of the potential Class for their consideration and response.

3.    <u>The Settlement Is Adequate.</u>

As previously mentioned, in a somewhat similar class action, the court aptly observed that it would have been irrational for most, and probably all, class members to pursue their claims on an individual basis "because of the disparity between their litigation costs and what they hope to recover." *Local Joint Executive Bd.*, 244 F.3d at 1163.

The recovery provided through the Settlement is reasonable, primarily as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes.... Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation...." *Officers for Justice,* 688 F.2d at 634 (citation omitted). Accordingly, a settlement is not to be judged against a speculative measure of what might have been achieved. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). An additional consideration is that a settlement provides for payment to the class now, rather than a payment many years down the road, if ever. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Here, considering the present value of the Settlement sum, the probability of lengthy litigation in the absence of a settlement, and the risks that the Class might not have prevailed at

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

trial, it is no exaggeration to predict that without using the class action process, the relief that members of the Class were likely to achieve individually ranged from negligible to zero. Consequently, the $3,900,000.00 Settlement satisfies the criterion of adequacy. *See Manual for Complex Litigation* § 21.62 ("Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process.").

**D.    The Notice Adequately Informs Class Members of the Settlement.**

The Notice explains how to participate in the Settlement (do nothing), how to request to be excluded or object, and the consequences of the action the Class Member takes (doing nothing, opting out, or objecting), in terms of both financial benefit and release of claims. (*See* Settlement at Exhibit C, Notice.) The Notice informs Class Members about the final approval hearing, their rights with respect to that hearing, and how to obtain more information. (*Id.*) Likewise, the exclusion process is simple and straightforward. (*Id.*) The 30-day time frame for Class Members is reasonable, allowing Class Members to digest the information in the notice and obtain answers to questions before deciding on the action they want to take. Accordingly, in addition to approving the Settlement as a whole, the Parties respectfully request that the Court approve the Notice and other ancillary forms in substantially the same format as presented with the Settlement.

**E.    Approval and Appointment of CPT Group as Settlement Administrator.**

The Parties have agreed that CPT Group should be appointed as the Settlement Administrator in this case and instructed to carry out the terms of the Settlement. (Jones Dec. ¶ 27.) CPT Group has committed to effectuating the administration of the Settlement within the costs allocated under the Settlement. (*Id.*) Accordingly, CPT Group should be appointed as Settlement Administrator, and their fees and costs of up to $32,500.00 should be preliminarily approved. (*Id.*)

/ / /

/ / /

/ / /

**IV.    CONCLUSION**

Based on the information and reasons provided above, the Parties respectfully request that the Court enter the proposed order granting preliminary approval of the class action Settlement attached hereto.

Dated:  December 29, 2025                    Dated:  December 29, 2025

**THIERMAN BUCK**                            **SUTTON HAGUE LAW CORPORATIONS, P.C.**

*/s/ Leah L. Jones*                          */s/ Jared Hague*
Joshua D. Buck, Nev. Bar No. 12187          S. Brett Sutton, Nev. Bar No. 143107
Leah L. Jones, Nev. Bar No. 13161           Jared Hague, Nev. Bar No. 251517

*Attorneys for Plaintiff*                    *Attorneys for Defendant*
*and the Putative Classes*                   GOLDEN ROAD MOTOR INN, INC. d/b/a
                                             ATLANTIS CASINO RESORT SPA

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

JOINT MOTION FOR PRELIMINARY APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT